UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAMAR L. WALKER, II,

           Petitioner,           Case No. 4:17-cv-10719
                                            Hon. Terrence G. Berg
v.

THOMAS WINN,

           Respondent.
_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DENYING A CERTIFICATE OF APPEALABILITY, AND (3) DENYING PERMISSION TO APPEAL IN FORMA PAUPERIS**

This is a habeas case brought by a Michigan prisoner under 28 U.S.C. § 2254. Petitioner Lamar L. Walker, II was convicted after a bench trial in the Wayne Circuit Court of second-degree murder, MICH. COMP. LAWS § 750.317, possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, and interfering with a police investigation, MICH. COMP. LAWS § 750.483a(3)(b). He was sentenced to 25 to 40 years for the murder conviction, 2 years for the firearm conviction, and 2 to 10 years for the interfering with an investigation conviction.

The petition raises two claims: (1) Petitioner was denied the effective assistance of counsel and (2) insufficient evidence was presented to disprove that Petitioner acted in self-defense. The Court will deny the petition because Petitioner's claims are without merit. The Court will also deny Petitioner a

1

certificate of appealability, and it will deny permission to proceed on appeal in forma pauperis.

## I. Background

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). See *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant's convictions arise from the shooting death of defendant's uncle, Jeffrey Perry, in the early morning hours of July 5, 2013. Specifically, on July 4, 2013, Jeffrey and defendant attended a fireworks display with Briana Noland (Jeffrey's girlfriend), Noland's two small children, Chantel Tatum (defendant's girlfriend), and Terrell Perry (the victim's son). Defendant took an AK-47 automatic rifle with him to the show, planning to shoot it after the fireworks. Later that evening, they dropped Noland and her children at their home, and then continued driving in the white van that they had driven to the fireworks. A fight then ensued between Jeffrey and Terrell, after which Terrell was left on the side of the road. Defendant and Jeffrey then exchanged heated words, and defendant fired on Jeffrey at close range with the AK-47. Tatum, who was still in the van, witnessed the shooting. Terrell, who was still nearby, heard the shots and saw the van "lighting up" with gunfire. Defendant then pushed Jeffrey's body out of the van and ordered Terrell back inside. The van was later set on fire and left to burn. After the shooting, defendant left the state. He later confessed to Tony Wright, a friend of Jeffrey's, that he had shot Jeffrey, but defendant claimed he had done so to protect Terrell. Defendant was arrested when he returned to Michigan and, in a statement to police, he denied any involvement with the shooting.

*People v. Walker*, No. 322810, 2016 WL 453455, at *1 (Mich. Ct. App. Feb. 4, 2016).

Following his conviction and sentence as indicated above, Petitioner filed a claim of appeal in the Michigan Court of Appeals. His brief on appeal raised the following claims:

2

> I. Repeated errors and acts on the part of defense counsel denied the defendant of his state and federal constitutional right to the effective assistance of counsel and the right to a fair trial pursuant to US Const. Amds. VI, XIV; Const. 1963 Art. I, secs. 17, 20.
>
> II. Due Process requires reversal where the defendant's convictions were obtained on the basis of legally insufficient evidence pursuant to US Const. Amds. V, VI, XIV; Const. 1963 Art. I, secs. 17, 20.

The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished opinion. *Id*. Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court that raised the same claims. The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed by the Court. See *People v. Walker*, 885 N.W.2d 469 (Mich. 2016) (table).

## II. Standard of Review

28 U.S.C. § 2254(d) curtails a federal court's review of constitutional claims raised by a state prisoner in a habeas corpus action if the claims were rejected on the merits by the state courts. Relief is bared under this section unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam),

3

quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

"[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) quoting *Williams*, 529 U.S. at 413.

Demonstrating that a state court unreasonably applied clearly established Supreme Court law is no easy task because "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S.86, 101 (2011), quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103 (internal quotation omitted).

### III. Analysis

A. Ineffective Assistance of Counsel

Petitioner's first claim asserts that he was denied the effective assistance of

4

trial counsel. Petitioner argues that his attorney performed deficiently by advising him to waive his right to a jury trial because counsel had a close relationship with the trial judge and could have a private conversation with him about the case. Petitioner also asserts that his counsel was ineffective for dismissing his desire to testify in his own defense. Finally, Petitioner asserts that his counsel was ineffective for failing to move to suppress the admission of the firearm admitted at trial.

To establish ineffective assistance of counsel, a defendant must show both that: (1) counsel's performance was deficient, i.e., "that counsel's representation fell below an objective standard of reasonableness"; and (2) the deficient performance resulted in prejudice to the defense. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). The test for prejudice is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

After reciting the controlling standard, the Michigan Court of Appeals found that Petitioner failed to demonstrate that he was denied the effective assistance of counsel with respect to any of his three allegations. *Walker*, 2016 WL 453455, at *2-5. The decision of the state appellate court did not result in an unreasonable

application of the *Strickland* standard.

First, Petitioner asserts that his counsel coerced him into waiving his right to a jury trial based on a relationship he had with the trial court. The trial record belies the claim:

> THE COURT: Okay. Today is the day set for a jury trial. And we've had a chance to talk about some scheduling issues off the record. It's my understanding the defendant now wishes to waive his right to trial by jury. And I have before me what appears to be a signed waiver form. Mr. Walker, would you stand and raise your right hand, please.
>
> MR. BARNETT (Defense Counsel): Stand up, Mr. Walker.
>
> THE COURT: And raise your right hand. Do you solemnly swear or affirm to tell the truth?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Okay. Now, Mr. Walker, I'm gonna' show you something called a waiver of trial by jury form. Is that your signature on the form?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And you understand what that means?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: It -- most or in a lot of trials there's a jury sitting there making the decision on your case. And you have a right to a jury trial if you want it. But you also have the right, so long as the People do not object -- And I gather the People do not object to a waiver here, Mr. Prasad, is that correct?
>
> MR. PRASAD (Prosecutor): That is correct, your Honor.
>
> THE COURT: So long as the People don't object you can have a waiver trial or a non-jury trial. It means that there's no jury there. Your case is tried in front of me, and I'm the only one making the decision about whether you're guilty or not guilty. You understand that?

>   THE DEFENDANT: Yes, sir.
>
>   THE COURT: You're okay with that?
>
>   THE DEFENDANT: Yes, sir.
>
>   THE COURT: Has anybody promised you anything or threatened you or twisted your arm in any way to get you to give up your rights to a jury trial and have a waiver trial?
>
>   THE DEFENDANT: No, sir.
>
>   THE COURT: Has anybody suggested to you that I'd give you a break if you did that?
>
>   THE DEFENDANT: No, sir.
>
>   THE COURT: All right. I will accept then Mr. Walker's right to his to -- or accept his waiver of his right to trial by jury and sign the waiver form.

Dkt. 8-9, at 4-7.

The decision to waive a jury and proceed with a bench trial is a "classic example of strategic trial judgment" for which *Strickland* requires deferential judicial scrutiny, particularly on habeas review. See *Walendzinski v. Renico*, 354 F. Supp. 2d 752, 758 (E.D. Mich. 2005) (citation omitted). Trial counsel's advice to Petitioner to waive a jury and proceed with a bench trial "constitutes a conscious, tactical choice between two viable alternatives." *Id.*; *Willis v. Smith*, 351 F.3d 741, 746 (6th Cir. 2003) ("[The petitioner's] attorney could have reasonably believed that it was better strategy for Willis to be tried by the judge rather than a jury, and [the petitioner] has failed to offer any evidence to the contrary."). Even assuming for the sake of argument that Petitioner's lawyer said he could have an ex parte

7

conversation with the judge and that this statement could have persuaded Petitioner to agree to a bench trial (conduct that would qualify as ineffective assistance), the Court's colloquy with Petitioner demonstrates that his waiver was nonetheless voluntary. Given the chance to disclose any influences that may have affected his decision to waive a jury trial during the trial court's questioning, Petitioner denied that anyone had promised him anything or threatened him in any way to obtain his jury trial waiver.

Moreover, Petitioner has failed to show that he was prejudiced by counsel's recommendation to proceed with a bench trial because he has presented no evidence suggesting that the bench trial he received was less than fair or that the trial judge was biased against him in any way. *Willis*, 351 F.3d at 746. Moreover, given the evidence presented during the bench trial, it is unlikely that a jury would have acquitted Petitioner after hearing the same evidence. *Walendzinski*, 354 F. Supp. 2d at 758. Given the doubly-deferential standard of ineffective assistance of counsel claims reviewed under section 2254, Petitioner has failed to demonstrate entitlement to relief with respect to this claim.

Petitioner asserts that his counsel was ineffective for coercing him into not testifying in his own defense. This claim fails for the same reason. The following colloquy occurring after the prosecutor rested its case:

> THE COURT: -- just stand up. You, and, you know, you -- Mr. Barnett I'm sure has told you this, but I wanna, I want you to hear it from me. You have a right to take the stand and testify on your own behalf and give us your side of this. On the other hand you also have a right to remain silent and not testify. And if you excise your right to remain

8

> silent, I cannot take that into account and will not take that into account in deciding this case. All right?
>
> THE DEFENDANT: Yes.
>
> THE COURT: So as you stand there right now, do you know, do you wanna testify or not testify?
>
> THE WITNESS: I don't.
>
> THE COURT: You do not. Okay.

Dkt. 8-14, at 71.

Then having another night to consider whether to testify, Petitioner confirmed his decision not to on the next morning of trial:

> MR. BARNETT: The defendant has not changed his mind, your Honor. He is not going to testify in the case in fact. I spoke to him this morning to verify it. He placed it on the record, and he thoroughly and completely understands everything. Do you agree, sir, you're not going to testify?
>
> THE DEFENDANT: Yes.

Dkt. 8-15, at 3.

Because the record is devoid of any indication by Petitioner that he disagreed with counsel's advice that he should not testify—indeed the record contradicts his claim—Petitioner has not overcome the presumption that he willingly acceded to his counsel's advice not to testify. *Gonzales v. Elo*, 233 F. 3d 348, 357 (6th Cir. 2000).

Moreover, Petitioner has not shown that he was prejudiced by counsel's advice that he should not testify. Petitioner asserts that he would have testified in support of his self-defense claim, but he does not indicate the details of his proposed testimony. That is not sufficient to establish prejudice. *Hodge v. Haeberlin*, 579 F.

9

3d 627, 641 (6th Cir. 2009) (holding that defendant did not demonstrate prejudice required to establish claim of ineffective assistance of counsel based upon defense counsel's alleged impairment of his right to testify at capital murder trial where defendant did not provide details about substance of his testimony and merely speculated that his testimony would have had impact on jury's view of certain witnesses' credibility and of his involvement in murders). Petitioner's second claim of ineffective assistance of counsel is therefore without merit.

Finally, Petitioner asserts that his counsel was ineffective for failing to move to suppress the admission of the firearm admitted at trial. The Michigan Court of Appeals rejected the claim because "counsel could have reasonably concluded that an objection to the introduction of the gun evidence was unnecessary because defendant did not dispute that he shot Jeffrey with an AK-47 and instead defense counsel argued a self-defense theory." *Walker*, 2016 WL 453455, at *5. This decision is reasonable and consistent with the trial record. Rather than contest Petitioner's identity as the perpetrator, the defense chose to raise a claim of self-defense. Petitioner does not contest the decision to raise self-defense – indeed he claims he should have testified in support of the claim. Accordingly, the decision not to contest the admission of the firearm was not ineffective.

Petitioner's first claim is therefore without merit.

B. Sufficiency of the Evidence

Petitioner next claims that insufficient evidence was presented at trial to prove beyond a reasonable doubt that the shooting was not performed in self-

defense. The claim is not cognizable because it cannot be supported by clearly established Supreme Court law. Furthermore, if the claim were reviewable, it is without merit.

Under Michigan law, self-defense is an affirmative defense. See *People v. Dupree*, 486 Mich. 693, 704, 712 (2010). "An affirmative defense, like self-defense, 'admits the crime but seeks to excuse or justify its commission. It does not negate specific elements of the crime.'" *People v. Reese*, 491 Mich. 127, 155, n. 76 (2012)(quoting *Dupree*, 486 Mich. at 704, n. 11). Although under Michigan law the prosecutor is required to disprove a claim of self-defense or defense of others, See *People v. Watts*, 61 Mich. App. 309, 311 (1975), "[p]roof of the nonexistence of all affirmative defenses has never been constitutionally required. . . ." See *Smith v. United States,* 568 U.S. 106, 133 S. Ct. 714, 719 (2013) (quoting *Patterson v. New York*, 432 U.S. 197, 210 (1977)).

The Supreme Court and the Court of Appeals for the Sixth Circuit have rejected the argument that the Constitution requires the prosecution to disprove self-defense beyond a reasonable doubt. See *Gilmore v. Taylor*, 508 U.S. 333, 359 (1993)(Blackmun, J., dissenting) ("In those States in which self-defense is an affirmative defense to murder, the Constitution does not require that the prosecution disprove self-defense beyond a reasonable doubt"); *Martin v. Ohio*, 480 U.S. 228, 233-36 (1987); see also *Allen v. Redman*, 858 F. 2d 1194, 1197 (6th Cir.1988) (explaining that habeas review of sufficiency-of-the-evidence claims is limited to elements of the crimes as defined by state law and citing *Engle v. Isaac*,

456 U.S. 107 (1982), and *Duffy v. Foltz*, 804 F.2d 50 (6th Cir. 1986)). Therefore, "the due process 'sufficient evidence' guarantee does not implicate affirmative defenses, because proof supportive of an affirmative defense cannot detract from proof beyond a reasonable doubt that the accused had committed the requisite elements of the crime." *Caldwell v. Russell*, 181 F.3d 731, 740 (6th Cir. 1999).

Even assuming the claim is reviewable, however, it is without merit because it was reasonably rejected by the Michigan Court of Appeals. "The Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id*. at 318-19 (internal citation and footnote omitted) (emphasis in the original).

A federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas

relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. See *Cavazos v. Smith*, 565 U.S. 1, 132 S. Ct. 2, 4 (2011). For a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 132 S.Ct. 2060, 2065, 182 L. Ed. 2d 978 (2012).

The Michigan Court of Appeals recited the evidence tending to prove beyond a reasonable doubt that the Petitioner did not act in self-defense:

> Here, defendant claims that he reasonably believed his life was in danger because there was evidence that, before defendant fired his weapon, Jeffrey reached under the driver's seat and defendant could have reasonably believed that Jeffrey was reaching for a gun. Contrary to this assertion, although there was evidence that Jeffrey reached under the seat, Tatum also testified that Jeffrey had "straighten[ed] back up before he was shot." And, in any event, there was no evidence to suggest that defendant would have reason to believe that Jeffrey might have had a gun or any other weapon under his seat. Tatum, Terrell, and Noland all testified that they had not seen the victim with a gun, or any other weapon, on the night of the incident. The victim's daughter testified that she had never seen her father with a gun, and Terrell did not think that his father owned any firearms. Wright, who had known the victim for years, said he knew the victim owned one gun, but that he had only ever seen the victim carry it a few times, and no one suggested that Jeffrey had ever stored a gun, or other weapon, under the seat of his car. This record does not support the assertion that defendant honestly and reasonably believed that Jeffrey reached under the seat for a gun, or other weapon, such that the use of deadly force was necessary.
>
> Moreover, Tatum testified that defendant shot the victim once, after which there was "a pause" and Jeffrey then attempted to escape from the van. Only after this pause, and while Jeffrey was trying to escape unarmed, did defendant continue to shoot and ultimately kill Jeffrey. Given this evidence, the trial court could reasonably conclude that shooting Jeffrey an additional eight times as he attempted to flee

was unnecessary to prevent defendant's imminent death or harm. Indeed, the trial judge specifically credited Tatum's testimony on this point, and ruled out self-defense after considering all of the evidence presented, including medical testimony. The trial court stated:

> One could argue on the defendant's behalf that when the victim went under the seat, the defendant might have though [sic] the victim was going for a gun even if it was a mistake on his part, even if there ultimately was no gun. But the defendant would've know [sic] that there was no gun actually certainly shortly after the first shot was fired.
>
> And even though such a state of mind might explain the first shot, it wouldn't explain the second through the ninth shots because at that point by accounts of [Tatum], and it's a [sic] frankly well confirmed by the medical examiner's anatomical drawing, the victim was turned around. All the shots hit the right side of the victim's body in one place or another. And that's consistent with [the victim] being turned around trying to get out of the vehicle, and turned with his right side facing the shooter.
>
> And, of course, as he's trying to get out of the vehicle, the shooter would obviously see that he was not armed or that -- and, and with the victim trying to essentially escape at that point, he would've had no justifiable reason under self defense theory to fire offer [sic] the other eight shots that were fired off. So I can rule out self-defense easily.

In sum, viewed in a light most favorable to the prosecution, sufficient evidence existed to disprove defendant's claim of self-defense beyond a reasonable doubt. Consequently, defendant's challenge to the sufficiency of the evidence supporting his convictions is without merit.

*Walker*, 2016 WL 453455, at *6-7.

Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence at trial to exclude every reasonable hypothesis except that of guilt. *Johnson v. Coyle*, 200 F.3d 987, 992 (6th Cir. 2000)(internal quotations omitted). The evidence that Petitioner continued to shoot the victim after he fled the

vehicle strongly supports that conclusion of the trial court that Petitioner did not act in self-defense. Given the doubly-deferential standard of review, Petitioner has failed to demonstrate entitlement to relief with respect to his second claim.

Because both of Petitioner's claims are without merit, the petition will be denied.

## IV. Certificate of Appealability

In order to appeal the Court's decision, Petitioner must obtain a certificate of appealability. To obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States*, 310 F.3d 900, 901 (6th Cir. 2002). Here, jurists of reason would not debate whether the petition should have been resolved in a different manner because Petitioner's claim is devoid of merit. The Court will therefore deny a certificate of appealability. The Court will also deny permission to appeal in forma pauperis because an appeal of this decision cannot be taken in good faith. 28 U.S.C. § 1915(a)(3).

## V. Conclusion

Accordingly, the Court 1) **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus, 2) **DENIES** Petitioner's pending motions, 3) **DENIES** a certificate of appealability, and 4) **DENIES** permission to appeal in forma pauperis.

**SO ORDERED.**

                                        s/Terrence G. Berg
                                        TERRENCE G. BERG
                                        UNITED STATES DISTRICT JUDGE

Dated:    December 21, 2017

## Certificate of Service

I hereby certify that this Order was electronically submitted on December 21, 2017, using the CM/ECF system, which will send notification to each party.

                                          s/H. Monda
                                          Case Manager,
                                          in the absence of A. Chubb